1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    PARIMAL K. SHAH,                           No.  2:19-cv-1184-KJN

12                    Plaintiff,                  ORDER ON PARTIES' CROSS-MOTIONS
                                                 FOR SUMMARY JUDGMENT
13          v.
                                                 (ECF Nos. 12, 14)
14    COMMISSIONER OF SOCIAL
      SECURITY,
15
                    Defendant.
16

17          Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

18    denying his application for Disability Insurance Benefits under Title II of the Social Security

19    Act.[1]  In his summary judgment motion, plaintiff contends the Administrative Law Judge ("ALJ")

20    erred by failing to treat his PTSD as severe, and by improperly rejecting his own testimony and

21    certain opinions of three supporting physicians.  The Commissioner filed an opposition and filed

22    a cross–motion for summary judgment.

23          After considering the parties' written briefing, the record, and the applicable law, the court

24    DENIES the Commissioner's cross-motion for summary judgment, GRANTS IN PART

25    plaintiff's motion for summary judgment, and REMANDS for further proceedings.

26    —————————————

27    [1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties
      voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF
28    Nos. 7, 8.)

1    I.    **BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS**[2]

2         On October 6, 2017, plaintiff filed a claim for disability, alleging an onset date of

3    November 30, 2016.  (See Administrative Transcript ("AT") 70-71.)  Plaintiff listed as medical

4    conditions the following: "Ischemic heart disease, heart attack, stents placements; PTSD (anxiety

5    sleep disturbance paranoia etc.); Chronic pain: neck back hips shoulders legs; Osteoporosis;

6    Glaucoma; Planter fasciitis; Gulf War Syndrome (IBS insomnia pain etc.); Diabetes mellitus type

7    2; Tinnitus with bilateral hearing loss; Hiatal hernia."  (Id.)  Plaintiff's application was denied

8    initially and again upon reconsideration.  (AT 70-81; 82-97.)  Plaintiff, aided by an attorney,

9    sought review of these denials with an ALJ.  (AT 118.)  At a November 20, 2018 hearing,

10   plaintiff testified about his conditions, and the ALJ heard testimony from a vocational expert

11   regarding plaintiff's ability to perform his past or other work.  (AT 32-68.)

12        On January 25, 2019, the ALJ issued a decision determining plaintiff was not disabled

13   from his onset date through the present.  (AT 15–26.)  At Step One, the ALJ concluded that

14   plaintiff had not engaged in substantial gainful activity since November 30, 2016, his alleged

15   disability onset date.  (AT 17.)  At Step Two, the ALJ found that plaintiff had the following

16   severe impairments: degenerative disc disease; mild osteoarthritis of the bilateral hips; adhesive

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a).  A parallel five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 404.1520, 404.1571—76; Bowen v. Yuckert, 482 U.S. 137, 140—42 (1987).  The following summarizes the sequential evaluation:
  **Step One**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled.  If not, proceed to step two.
  **Step Two**:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
  **Step Three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled.  If not, proceed to step four.
  **Step Tour**:  Is the claimant capable of performing past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
  **Step Five**:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled. If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

1   capsulitis; bilateral shoulders; and coronary artery disease.  (Id.)  Relevant here, the ALJ also

2   found plaintiff's PTSD to "not cause more than minimal limitation in [his] ability to perform

3   basic mental work activities."  (AT 18.)  The ALJ determined at Step Three that plaintiff's

4   impairments did not meet or medically equal the severity of an impairment listed in Appendix 1.

5   (Id.) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1).)

6          Based on this information, the ALJ found plaintiff had the residual functional capacity

7   ("RFC") to perform light work, except that:

8              [He] cannot climb ladders, ropes, or scaffolds; can occasionally
               perform postural activities such as stooping, crouching, or crawling;
9              can occasionally perform overhead reaching; frequently perform
               other reaching; and frequently perform handling, fingering, and
10             feeling.

11  (AT 19-20.)  In reaching this conclusion, the ALJ stated she considered plaintiff's symptom

12  testimony, the objective medical evidence in the record, and the opinion evidence of multiple

13  physicians.  (AT 20.)  Relevant here, the ALJ found plaintiff's testimony "concerning the

14  intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the

15  medical evidence and other evidence in the record."  (AT 22.)  This included a comparison of his

16  physical and mental functionality to various exam records, his receiving "generally conservative

17  treatment for his impairments[,]" and "normal level of daily activity."  (Id.)  The ALJ also found

18  the more-limiting aspects of the medical opinions of Dr. Egan, Dr. Alpuerto, and Dr. Paltenghi to

19  be inconsistent with the record.  (AT 23-24.)  Finally, the ALJ noted that according to the medical

20  records, plaintiff's PTSD symptoms were improving, and that plaintiff's functioning "was

21  decreased slightly [due to] normal life stressors, [not PTSD]."  (AT 24.)  Ultimately, the ALJ

22  concluded at Step Four that plaintiff was capable of performing his past relevant work, or

23  alternatively that he could perform other jobs existing in significant numbers in the national

24  economy.  (AT 25–26.)

25          On May 29, 2019, the Appeals Council denied plaintiff's request for review.  (AT 1–6.)

26  Plaintiff then filed this action within sixty days requesting judicial review of the Commissioner's

27  final decision; the parties filed cross–motions for summary judgment.  (ECF Nos. 1, 12, 14, 15.)

28  ///

1   **II.     LEGAL STANDARD**

2        The court reviews the Commissioner's decision de novo, and should reverse "only if the

3   ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ

4   applied the wrong legal standard."  Buck v. Berryhill, 869 F. 3d 1040, 1048 (9th Cir. 2017).

5   Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such

6   relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

7   Edlund v. Massanari, 253 F. 3d 1152, 1156 (9th Cir. 2001).  "The ALJ is responsible for

8   determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Id.

9   The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one

10  rational interpretation." Tommasetti v. Astrue, 533 F. 3d 1035, 1038 (9th Cir. 2008).  Further, the

11  court may not reverse the ALJ's decision on account of harmless error.  Buck, 869 F. 3d at 1048.

12  **III.    ISSUES PRESENTED**

13       Plaintiff contends the ALJ's decision is based on legal error not supported by substantial

14  evidence.  Specifically, plaintiff alleges error in:  (A) the ALJ's Step Two finding that plaintiff's

15  PTSD is not severe; and (B) the ALJ's RFC formulation.  With regard to the RFC formulation,

16  plaintiff alleges error in the ALJ's assessment of plaintiff's PTSD—particularly in that the ALJ

17  failed to consider it in combination with plaintiff's coronary artery disease, as noted by Dr. James

18  Egan.  Plaintiff also argues the ALJ erred in evaluating his symptom testimony and the opinions

19  of three of plaintiff's physicians.  Plaintiff argues that when any or all of this evidence is credited

20  as true, the only remedy is to remand for benefits.  (ECF No. 12.)

21       The Commissioner argues the ALJ adequately concluded that plaintiff's PTSD was non-

22  severe, as plaintiff's daily activities, conservative treatment, and medical opinions reflected mild

23  limitations of plaintiff's condition.  Further, the Commissioner argues the ALJ sufficiently

24  detailed why she (properly) discounted both plaintiff's symptom testimony and the opinions of

25  the physicians.  Thus, the Commissioner argues the decision is free of legal error and supported

26  by substantial evidence, which should result in affirmance.  Alternatively, the Commissioner

27  argues any finding for plaintiff should result in a remand for further proceedings, as plaintiff

28  challenges ambiguity in the decision.  (ECF No. 14.)

1    **IV.    DISCUSSION**

2         **A. The ALJ's classification of plaintiff's PTSD is harmful error.**

3              1. Step Two Analysis

4         At Step Two, the ALJ is to classify a claimant's impairments as either "severe" or "non-

5    severe."  See 20 C.F.R. § 404.1520.  A "severe" impairment is one that significantly limits the

6    physical or mental ability to perform basic work activities.  Id.  However, "[a]n impairment or

7    combination of impairments may be found 'not severe only if the evidence establishes a slight

8    abnormality that has no more than a minimal effect on an individual's ability to work.'"  Webb v

9    Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Smolen v. Chater, 80 F.3d 1273, 1290 (9th

10   Cir. 1996)).  The ALJ's conclusion must be "clearly established by medical evidence."  Id.  The

11   Step Two assessment is a "de minimus screening to dispose of groundless claims."  Edlund, 253

12   F3d at 1158.  Any failure to classify an impairment at Step Two harmless if the ALJ considered

13   the impairment when assessing the RFC.  Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

14        Plaintiff argues that the ALJ's classification of his PTSD as non-severe was error.

15   Plaintiff notes the record contains multiple medical reports demonstrating his PTSD diagnosis,

16   which the ALJ either completely ignored, "cherry-picked," or misconstrued in an effort to

17   downplay the impairment.  Further, plaintiff argues that so downplaying, the ALJ inappropriately

18   isolated his PTSD impairment instead of considering its "combined effect" alongside his coronary

19   artery disease—as noted by Dr. Egan.

20        The undersigned is troubled by the ALJ's treatment of plaintiff's PTSD at Step Two.

21   First, the ALJ stated, in characterizing the impairment as non-severe, that "[t]reatment notes

22   indicate a history of PTSD but no mental health visits documented since 2011."  (AT 18.)  The

23   ALJ then states—in the very next sentence—that plaintiff "started mental health treatment again

24   in 2017."  This inconsistency appears inexplicable, especially because the ALJ concludes this

25   paragraph by discussing some of plaintiff's numerous medical records demonstrating treatment of

26   his PTSD by mental health professionals at the VA.  Second, plaintiff's medical records reflect

27   (as the ALJ found) that plaintiff's mental symptoms are sometimes aggravated by "situational

28   stressors."  (See, e.g., AT 394.)  However, the ALJ's scant analysis of plaintiff's PTSD at Step

1   Two ignores the large amount of data indicating the impairment is something beyond a "slight

2   abnormality."  (See, e.g., AT 985-99, 1009-16, 1183-92, 1211-19, 1672-79, 1992-98, 2201-08,

3   2218-25, 2260-67.)  As plaintiff argues, the ALJ's characterization of plaintiff's PTSD appears to

4   be a "cherry-picking" of the record—of which courts in the Ninth Circuit have consistently

5   disapproved.  See, e.g., Hutchinson v. Colvin, 2016 WL 6871887, *4 (W.D. Wash., Nov. 22,

6   2016) (noting the ALJ's treatment of the evidence at Step Two suggested improper "cherry-

7   picking" to support the ALJ's decision "while failing to address aspects of the record supporting a

8   finding of severe limitations.") (citing Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014)).

9   Third, plaintiff is correct that the ALJ seems to have ignored, at Step Two, Dr. Egan's diagnosis

10  that plaintiff's PTSD augments his other impairments.  (AT 2281.)  Smolen, 80 F.3d at 1290

11  ("[A]t the step two inquiry, [] the ALJ must consider the combined effect of all of the claimant's

12  impairments on her ability to function, without regard to whether each alone was sufficiently

13  severe.") (citing 42 U.S.C. § 423(d)(2)(B)).  In sum, the ALJ has failed to "clearly establish" that

14  plaintiff's PTSD is non-severe at Step Two.  Webb, 433 F.3d at 687 ("[O]n the record that does

15  exist, the ALJ's reasons for rejecting Webb's complaints at step two are not substantial enough to

16  meet the "clear and convincing" standard when balanced against Webb's doctors'

17  contemporaneous observations, some objective tests and Webb's subjective complaints.").

18      Further, while the ALJ discussed plaintiff's PTSD when formulating the RFC, there are

19  errors in that analysis (discussed below) that preclude a 'harmless' designation at Step Two.

20  Lewis, 498 F.3d at 911; cf. also Delgado v. Comm'r., 500 F. App'x 570 (9th Cir. 2012) (finding

21  error at Step Two where ALJ disregarded minimal evidence from plaintiff's physician regarding

22  his impairments, and reversing where ALJ stopped at Step Two); Ormberg v. Astrue, 254 F.

23  App'x 589, 590–91 (9th Cir. 2007) (finding error at Step Two for failing to consider medical

24  evidence of sleep apnea at step two, and reversing because "[p]laintiff's sleep apnea imposed

25  additional functional limitations not considered by the ALJ at the later steps of the process.");

26  with Cramer v. Berryhill, 706 F. App'x 385 (9th Cir. 2017) (finding any error to find impairments

27  severe at Step Two to be harmless because ALJ considered them in formulating RFC).

28  ///

1           2. RFC Formulation of Mental Limitations

2          Here, the RFC formulation limited plaintiff to light work with certain physical exceptions,

3   and did not include any limitations due to plaintiffs' PTSD or other mental impairments.  (AT 19-

4   20.)  The ALJ did not include any mental limitations in the RFC because she found the medical

5   evidence showed that plaintiff suffered no more than mild limitations in his mental faculties.  The

6   ALJ noted that plaintiff "has generally been observed to be in no acute distress," and his

7   "[m]ental status examinations have also been generally within normal limits with fair memory

8   and attention."  (AT 22 (citing AT 2137, 2157, 2179, 2205).)  The ALJ also noted that in an

9   October 2016 mental examination, Dr. Coate remarked:

10                  This veteran is a very high functioning physician, who is self-
                    employed. He continues to have PTSD symptoms which appear to
11                  be improving. He reports depression and anxiety which are
                    secondary to PTSD. His functioning has decreased slightly but I am
12                  not convinced that this is due the PTSD symptoms or his military
                    service but rather the normal life stressors.
13

14  (AT 24 (citing AT 1823).)  The ALJ found this opinion to be persuasive "as supported by the

15  record as a whole as discussed herein including his minimal mental health treatment generally

16  normal mental status findings and reported improvement with reduced life stressors."  (Id.)  The

17  ALJ also cited another examination from two weeks later where the physician noted plaintiff's

18  PTSD issues.  (AT 25 (citing AT 1261).)  The ALJ noted plaintiff had undergone examinations in

19  2010 and 2012, but found these records to lack persuasiveness because they were "remote in time

20  and superseded by later [] examinations in 2016 and 2017."  (Id.)  The ALJ also explicitly relied

21  on a state agency consultant who recommended limitations to simple tasks "with limited public

22  and/or coworker contact."  (Id. (citing AT 88).)  Finally, the ALJ cited to plaintiff's testimony as

23  to the intensity and persistence of his PTSD symptoms, but found this testimony inconsistent with

24  the medical and opinion records and his daily activities.  (AT 22.)  Particularly, the ALJ noted

25  multiple times that plaintiff had travelled to India to stay with family, could study for and pass his

26  board exams in 2017, could work part time as a locum tenens (temporary) physician, and could

27  generally care for himself.  (Id.)  The ALJ found this evidence demonstrated that plaintiff's

28  "expressed symptoms and limitations were not as severe as he alleged."

The undersigned might find the ALJ's analysis supported by substantial evidence if not for two particularly glaring issues.  First, the court notes that many of the medical records showing "conservative treatment" and personal daily activities—each indicating how plaintiff's PTSD is no more than a mild impairment—are from the years just prior to the ALJ's decision.  Normally, it would not be in error to focus on records, exams, and medical opinions from this time period.  But as the ALJ herself noted, these records were from a time when plaintiff had already stopped working.  Dr. Egan stated plaintiff undertook "substantial behavior modifications" after his heart surgery almost a decade ago, and one such modification appears to be plaintiff's decision to limit his work hours; this occurred well before he applied for disability. (AT 2281, see also AT 18 (citing AT 2224).)  Further, the undersigned cannot see the relevance in plaintiff's ability to take a flight to India to enjoy leisure time, or his ability to walk or prepare his own meals, on whether his PTSD can withstand the rigors of a full work week.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace.")  Simply, it is a logical fallacy to conclude that plaintiff's mental limitations do not preclude full time work because they did not affect him when he was not working.  To withstand scrutiny, the ALJ's analysis of plaintiff's PTSD limitations must be based on medical or other evidence from a time period when plaintiff was still working.  20 C.F.R. § 404.1545; see also SSR 96-8p ("Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule."); Willis v. Callahan, 979 F. Supp. 1299, 1305 (D. Or. 1997) ("If the claimant has stopped working, however, his or her residual functional capacity is determined by asking whether the claimant can work an eight-hour day. Thus, once a claimant has stopped working, she is considered disabled if she is only able to perform part-time work.") (citing Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989)).

The ALJ noted that records exist from a time period prior to when plaintiff stopped working, but she appears to disregard them simply because they are older.  (AT 25.)  It is not lost on the undersigned that, at the first four steps, the burden falls to plaintiff to proffer evidence of

8

1   his disability.  Bowen, 482 U.S. at 146 n.5.  Further, the undersigned recognizes that there may be

2   a gap concerning plaintiff's mental health treatment, as it appears plaintiff did not seek treatment

3   for his PTSD between 2011 and 2016.  (See AT 18.)  However, plaintiff testified that his ability

4   to work full time was limited by his PTSD (among other conditions), and Dr. Egan corroborated

5   this testimony in his October 2018 letter.  Thus, it falls to the ALJ to provide the reasons why this

6   testimony should be discounted, and in doing so the ALJ must rely on records that are

7   "relevant."[3]  20 C.F.R. § 404.1545 ("We will assess your residual functional capacity based on all

8   the relevant evidence in your case record.").

9          Correspondingly, the ALJ does not appear to have treated at all Dr. Egan's opinion that

10  plaintiff's coronary artery disease may be exacerbated by plaintiff's PTSD (and other emotional

11  stressors) if he were to return to full time work.  (AT 2281.)  In an October 2018 letter, plaintiff's

12  cardiologist Dr. Egan stated:

13              Over the ensuing seven years [since his heart surgery, plaintiff] has
                done very well from a clinical standpoint. This is attributable to his
14              careful adherence to recommended medications and substantial
                behavior modification. One aspect of the later has included
15              adjusting his employment schedule to avoid undue emotional stress,
                which may cause release of certain chemicals into the bloodstream
16              that increase the heart rate and blood pressure, both of which may
                result in insufficient blood flow to the heart muscle and increase the
17              risk of recurrent heart attack or angina pectoris.  This possibility is
                augmented in patients with a diagnosis of post-traumatic stress
18              disorder, which is one of [plaintiff's] co-diagnoses.

19  (Id.)  Dr. Egan concluded plaintiff could work "up to a four-hour daily work schedule," but the

20  ALJ found Dr. Egan's opinion to lack persuasiveness.  (AT 23.)  The ALJ stated the doctor's own

21  treatment notes (as well as the letter itself) indicated plaintiff's "cardiac condition was stable and

22  asymptomatic," and (again) noted plaintiff received conservative treatment and undertook

23  "extensive [] activities, including studying for and taking his medical boards, international travel,

24  and regular exercise."  (Id.)  While the ALJ's analysis of plaintiff's cardiac condition may suffice

25  _____

26  [3] It may be that records do exist from the time when plaintiff worked demonstrating the severity,
    or lack thereof, of his PTSD.  It also may be that another mental health professional might
27  contradict Dr. Egan, thus requiring the ALJ to resolve the inconsistency.  These are just two
    examples of what a court might find relevant.  The key, however, is for this evidence to evaluate
28  plaintiff's PTSD as applied to full time work.

as the condition stands on its own, the undersigned finds no discussion on its combined effect with plaintiff's PTSD—as Dr. Egan opines.  42 U.S.C. § 423 ("In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.").  The failure to address this issue at the RFC stage constitutes error.

### 3. Remedy

Plaintiff requests a single remedy—that the court remand for benefits.  (ECF No. 12 at 24-25.)  This cannot be had, as Dr. Egan's opinion and the missing analysis on plaintiff's PTSD (as it applies to plaintiff's ability to work full time) creates ambiguities requiring resolution.  It may very well be that the ALJ can obtain other medical opinions indicating plaintiff's PTSD, or its combination with his coronary artery disease, has little effect on plaintiff's ability to work full time (either in his previous employment or in other available jobs).  But this is for the ALJ, and not the court, to resolve.  Edlund, 253 F.3d at 1156 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.").  Thus, a remand for further proceedings is required.

**B. The court refrains from addressing plaintiff's other contentions.**

Because further proceedings are required, the court will not explicitly rule on plaintiff's other contentions (regarding plaintiff's other physical conditions, and the ALJ's analysis of plaintiff's symptom testimony and the medical opinions and evidence thereof).  (See ECF No. 12 at 15-17; 21-23.)  However, the court would be remiss if it failed to mention that the ALJ's analysis concerning plaintiff's other physical impairments appears well-reasoned.  On remand, it is (of course) within the ALJ discretion as to how much additional analysis will be required on these issues.  See, e.g., 20 C.F.R. § 983 ("Any issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case.").

///

1

**<u>ORDER</u>**

2       Accordingly, IT IS HEREBY ORDERED that:

3     1.     The Commissioner's motion for summary judgment (ECF No. 14) is DENIED;

4     2.     Plaintiff Shah's motion for summary judgment (ECF No. 12) is GRANTED;

5     3.     This matter is REMANDED for further administrative proceedings; and

6     4.     The Clerk is directed to enter judgment in plaintiff's favor and close the case.

7 Dated:  June 4, 2020

8

9 KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

10

11 shah.1184

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28